UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | |
| ) | NO. 2:06-CR-50 |
| MARK A. GILLIAM ) | |

REPORT AND RECOMMENDATION
REGARDING MOTION TO SUPPRESS EVIDENCE OF LINEUP IDENTIFICATION

In Counts Three and Four of the indictment, defendant is charged with the armed robbery of the Pizza Plus restaurant in Hamblen County, Tennessee, on March 23, 2006, a violation of the Hobbs Act. In Count Four, he is charged with using a firearm in the course of the offense described in Count Three, i.e., the Hobbs Act violation. The victim of that armed robbery was the trainee/manager of the Pizza Plus restaurant, Angie Jones Cody. She subsequently picked defendant's photograph out of six pictures of different individuals. Defendant contends that her identification of him from this photographic array was unreliable and he asks that her identification of him be suppressed. (Doc. 23).

This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on December 13, 2007.

On March 23, 2006, at approximately 10:00 p.m., an armed robbery occurred at the Pizza Plus restaurant in Russellville, Tennessee. As Ms. Cody was wiping off a table just vacated by customers, she turned around to see an individual standing in front of her who was wearing a hooded sweatshirt. He had a bandana or "sports band" across the tip of his nose and the lower part of his face. He also had a semi-automatic pistol in his right hand. Ms. Cody told the man, "Don't be

stupid," or words to that effect, but the man "shushed" her and nodded at her to go to the cash register. Ms. Cody obeyed his instructions, and placed all the currency in the cash register on the counter in front of the perpetrator. After she did so, she looked intently at the robber's face, at least what she could see of it above the bandana. After the robber left the premises with the money, Ms. Cody called the police and her manager.

Later that night, Ms. Cody met with Detective Ellis of the Morristown Police Department for purposes of providing a description of her assailant. Detective Ellis utilized a computer program known as "IdentiKit," a computer program that has hundreds of different facial features in its database that can be placed together to compose a picture or rendering of the suspect. In other words, it is a modern computerized version of a police sketch artist.

The program first asks generalized questions such as the gender, height, age, race, and eye color of the perpetrator. Once that information is supplied, the victim looks at a choice of facial features that the police officer can add to the rendering: for example, bushy eyebrows, or very sparse eyebrows; fat lips or thin lips; upturned mouth or a down-turned mouth; a sharp chin or a receding chin; and so on. Ultimately a picture appears, similar to the drawing of an old-time police sketch artist. Ms. Cody gave the best description she could in light of the fact that her assailant had a bandana across the lower half of his face. Detective Ellis provided no input to Ms. Cody in her selection of facial features, or otherwise made any suggestion to her regarding her choices. Stated another way, Ms. Cody's choices were hers, and hers alone. Moreover, Detective Ellis had no idea what defendant looked like or even that he was a suspect.

Since Ms. Cody could not describe any of the facial features below the tip of the nose, Detective Ellis used the computer to generate a facial covering in the likeness of a bandana across

the lower half of the face.

Some time later, Detective Herrera of the Morristown Police Department saw the computerized sketch of the perpetrator. Because of events that had occurred several days before, Herrera suspected that defendant might have been the individual who committed the robbery of the Pizza Plus restaurant. He subsequently instructed his secretary to compile a "photographic lineup," consisting of the photographs of six men with similar facial characteristics, and he specifically instructed his secretary to include a photograph of the defendant as one of the six. The six men depicted in those photographs indeed are remarkably similar and the Morristown Police Department should be commended for its efforts to make the photo lineup as fair as possible. Defendant's photograph was # 4. Detective Herrera showed this photographic array to Ms. Cody, instructing her to exclude the photographs of men whom she believed were not the perpetrator. Herrera took care not to indicate that the array included the photograph of the person whom he personally believed to be the perpetrator. As far as Ms. Cody knew, any of the six could have been the perpetrator, or none of them at all. Within approximately fifteen minutes, Ms. Cody excluded four of the photographs, numbers 2, 3, 5, and 6, leaving only photograph 1 and 4. Detective Herrera took a magic marker and blocked out the lower half of the faces of the men depicted in photographs 1 and 4 to account for the bandana the perpetrator wore during the robbery. Even when Detective Herrera blacked out the lower half of the faces in photographs 1 and 4, he did not suggest in any way to Ms. Cody that either of these men was the robber. Within three or four minutes, Ms. Cody identified photograph # 4 as the picture of the man who robbed her.

In determining whether police identification procedures in a lineup were "unnecessarily suggestive and conducive to irreparable mistaken identification" and thus violative of due process

3

under the Fifth and Fourteenth Amendments, the court must examine the "totality of the circumstances." *Stovall v. Denno*, 388 U.S. 293, 302 (1967). Similarly, photographic identifications must not be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

As previously noted, the Supreme Court in *Simmons, supra*, held that photographic identification procedures would be set aside only if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. Not only was there nothing *impermissibly* suggestive in this photo-graphic lineup procedure, there was nothing suggestive at all. Ms. Cody was not told that the photographs included defendant's picture, or even that any of those six pictures included one of a suspect. Again, she could have picked any of the six or none of them.

Obviously, the defendant is free to vigorously cross examine Ms. Cody at trial as he did during the hearing on this motion, and the jury will make of it what it will. It bears noting that Ms. Cody was an extremely articulate and creditable witness, and she was emphatic in her testimony that the police gave her no hint or clue at all regarding the photograph she should choose from the array, if any.

It is respectfully recommended that defendant's motion to suppress the lineup identification be denied.[1]

Respectfully submitted,

s/ Dennis H. Inman

---

[1] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

4

United States Magistrate Judge

\CriminalR&R\Gilliam, Mark1-50