UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | | |
|---|---|---|---|
| MARK GILLIAM, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 2:06-CR-50 |
| | ) | | 2:13-CV-201 |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

### MEMORANDUM OPINION

Petitioner, Mark Gilliam ("Gilliam" or "petitioner"), has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 186], which he has amended, [Doc. 196].[1]

**I. Background**

On August 8, 2006, petitioner was indicted for being a felon in possession of two firearms, [Doc. 1]. Attorney Tim Moore of Federal Defender Services was appointed to represent him. On October 17, 2006, a superseding indictment was filed which added a third count charging him with a Hobbs Act robbery of the Pizza Plus Restaurant in Morristown, Tennessee, and a fourth count charging him with using a handgun during the course of that robbery, [Doc. 20]. On January 20, 2007, attorney Moore moved to withdraw. The Court granted that motion, and appointed attorney Mark Slagle to assume representation of petitioner, [Doc. 53].

---

[1] The document filed as #196 is also filed as # 186-1, a matter explained in footnote 2 to this opinion.

1

Petitioner had been ordered detained pending his trial, and he was placed in the Greene County Detention Center by the United States Marshal Service. While there, he was found to be in possession of a shank and a razorblade, resulting in a second superseding indictment on March 13, 2007 which charged him with two additional counts of possessing those weapons while in the custody of the Marshal Service, [Doc. 63].

The Magistrate Judge ultimately ordered that these latter two counts should be tried separately from the first four, [Doc. 93]. Petitioner's trial on Counts One through Four commenced on January 8, 2008. On the second day of trial, before the conclusion of the government's proof, petitioner announced he had entered into a plea agreement with the government, [Minute entry, Doc. 115], and a plea agreement dated January 9, 2008 was filed that same day, [Doc. 116]. In the plea agreement, petitioner pled guilty to Count Three (the Hobbs Act robbery charge) and Count Four ( using a firearm during the robbery). The remaining four counts were to be dismissed. The Court conducted a change of plea hearing on January 9, 2008, and questioned petitioner at length and in great detail regarding his plea of guilty and the plea agreement. The Court concluded that petitioner was competent and that his change of plea was knowing and voluntary, [Tr., Change of Plea Hearing, Doc. 146]. On March 24, 2008, two months after his change of plea hearing, petitioner filed a *pro se* motion to withdraw his guilty plea and for appointment of a new lawyer. After holding a hearing on the motion, the Court denied it, [Doc. 125].

Using the 2007 version of a sentencing guidelines, the probation officer noted in the Presentence Report ("PSR") that petitioner's Base Offense Level for the Hobbs Act robbery was 20, [PSR, ¶¶ 15,16]. Two levels were added due to petitioner's threats directed at witnesses and his commission of perjury during the hearing on his motion to withdraw his guilty plea.

2

Petitioner had an extraordinarily lengthy criminal history, including robbery, multiple convictions for evading arrest, and several convictions for assault, [PSR ¶¶ 29-58]. Because of a robbery conviction in 1993, a conviction for reckless endangerment in 1999, and a conviction for evading arrest in 2001, he was classified as a career offender. Petitioner's enhanced criminal history totaled 33, far more than enough to establish a criminal history category of VI, [*Id.* ¶ 59]. The PSR also noted that 33 criminal history points "substantially under-represents the seriousness of defendant's criminal history and the likelihood that he [would] commit other crimes. Pursuant to USSG § 4A1.3(a)(1), an *upward* departure may be warranted in this case." [PSR, p. 20, emphasis supplied]. The resulting guideline range for the robbery conviction was 210 to 262 months. Because the statutory maximum was 20 years, the effective guideline range was 210 to 240 months. The maximum sentence for the 18 U.S.C. § 924(c) violation was life, with a mandatory minimum sentence of 84 months; any sentence imposed for that offense was required to run consecutively to the term of imprisonment imposed for the robbery offense. On July 21, 2008, this Court found that an upward departure was justified. Petitioner was sentenced to 240 months on the robbery conviction and 240 months on the § 924(c) conviction, and it was ordered that those sentences run consecutively. Petitioner appealed the denial of his motion for appointment of another lawyer to represent him at and after his attempt to withdraw his guilty plea, and this Court's application of the career-offender enhancement.

The Court of Appeals affirmed this Court's refusal to appoint another lawyer for him. However, noting that a recent Sixth Circuit case had held that Tennessee's reckless endangerment statute did not necessarily require violent conduct to support a conviction, the Court of Appeals remanded the case to this Court to determine if petitioner in fact committed a

3

violent act that resulted in his underlying conviction for reckless endangerment, which, of course, would have an effect on whether he was a career offender, [Op., Doc. 150].

After a resentencing hearing was held in July, 2011, this Court found that petitioner was not a career offender, and therefore the guideline range for the robbery conviction was 84 to 105 months. Petitioner also was subject to the statutorily-required consecutive sentence of at least 84 months on the § 924(c) conviction. This Court again pointed out that petitioner's criminal history category significantly under-represented his actual criminal history, and imposed the same sentence as it did before: 240 months on each count, the sentences to run consecutively, [Tr., Doc. 166, pp. 29-59; Amended Judgment, Doc. 164].

Petitioner appealed, arguing that this sentence was substantively unreasonable, among other things. The Court of Appeals disagreed, and on August 8, 2012 affirmed the judgment of this Court, [Op., Doc. 172].

## II. Petitioner's Claims

In his first or original motion, [Doc. 186], petitioner makes three claims: (1) that attorney Tim Moore of Federal Defender Services ineffectively represented him during plea negotiations; (2) that his Sixth Amendment right to counsel was violated; and (3) that his sentence was unconstitutional under *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

In his amended motion, [Doc. 196], petitioner claims (1) that his second attorney, Mark Slagle, who represented him at his trial, ineffectively represented him at the hearing on his motion to withdraw his guilty plea; (2) that his appellate counsel, James Bowman, rendered ineffective assistance in the course of the second appeal by failing to appeal and argue that the district court wrongfully denied his motion to withdraw his guilty plea; and (3) that his trial counsel, Mr. Slagle, was ineffective because he failed to fully investigate the case, failed to

4

obtain potentially favorable evidence, and because attorney Slagle coerced him into pleading guilty to a more serious offense (the Hobbs Act robbery) which entailed a much harsher penalty.

**III.    Standard of Review**

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.  Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994).  *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion).  If the sentencing court

lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell,* 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." *Id.* at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. The defendant "must identify

6

> the acts or omissions of counsel that are alleged not to have been
> the result of reasonable professional judgment." *Id.* To establish
> "prejudice," a "defendant must show that there is a reasonable
> probability that, but for counsel's unprofessional errors, the result
> of the proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine confidence in
> the outcome." *Id.* at 694, 104 S.Ct. 2052. "The likelihood of a
> different result must be substantial, not just conceivable."
> *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178
> L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an
> ineffectiveness claim on the ground of lack of sufficient prejudice
> ... that course should be followed." *Strickland,* 466 U.S. at 697,
> 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013)

IV. **Analysis**
    A. **Claims Raised in Original Motion, [Doc. 186]**
        (1) **Attorney Tim Moore Ineffectively Represented Petitioner During Plea Negotiations**

Petitioner argues that attorney Moore of Federal Defender Services deprived him of the opportunity to plead guilty to the felon in possession charges in the original indictment which he says would have foreclosed the filing of the subsequent superseding indictment which charged him with the far more serious offenses of the Hobbs Act robbery and brandishing a firearm during that robbery. Petitioner says that attorney Moore told him that he was "certain" that petitioner would be acquitted on the felon in possession charges based on the government's witness's lack of credibility; if he pleaded guilty (to being a felon in possession), he was "fairly certain" that petitioner would be classified as an armed career offender and subject to a life sentence; and that he felt that the Court would sentence him well above the mandatory minimum sentence due to his criminal history and because the case had been "referred" to federal court by the State of Tennessee. [Aff., Doc. 187, pp 15, 16].

In other words, petitioner argues that he declined to plead guilty to either or both of the felon in possession counts because of attorney Moore's advice, as a result of which the

government superseded the original indictment by adding the Hobbs Act robbery charge and the charge of using a gun during that robbery.

Petitioner faults attorney Moore for encouraging him to go to trial because the government's case charging him with being a felon in possession of firearms rested primarily on the testimony of Christy Collins, whose credibility was suspect. The problem with petitioner's argument is that attorney Moore did what attorneys are supposed to do--express opinions about the opponent's case and the opponent's witnesses.

The record clearly shows that petitioner was aware of the government's plea offer and that he understood that if he did not accept it, the government would attempt to obtain a superseding indictment that charged him with the Pizza Plus robbery. Petitioner knew the situation and the decision to reject the plea offer was his.

> Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction,

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).

Neither should attorney Moore be criticized for telling petitioner he could be classified as an armed career criminal. The indictment suggested that he would be so classified, and under Sixth Circuit law at that time, petitioner in fact was a career offender; [*see*, Opinion, Doc. 150, Part B]. Attorney Moore also correctly predicted that this court would be predisposed to sentence petitioner above the statutory minimum sentences based on his criminal history. Petitioner potentially confronted a maximum sentence of life on either or both of the felon in possession counts had he pleaded guilty to them. Since the government's case of being a felon in possession of firearms indeed did rest upon the testimony of Ms. Collins, and since petitioner apparently

8

maintained his innocence regarding the Pizza Plus robbery (as he obviously still does), eschewing a guilty plea to the original indictment was sound and logical.

Petitioner asks this Court to impose upon attorney Moore a foreknowledge or prescience that exceeds the limits of reasonably competent representation. Attorney Moore was not ineffective as petitioner argues.

**(2) Petitioner Was Denied Effective Assistance of Counsel**

This claim is directed at attorney Mark Slagle who represented petitioner after attorney Moore withdrew due to a conflict of interest. Actually, he raises several distinct claims within this general allegation.

(a) Petitioner first alleges that attorney Slagle failed to file a timely alibi notice pursuant to Federal Rule of Criminal Procedure 12. Presumably the alibi is the existence of a witness who purportedly who would have testified that someone else perpetrated the Pizza Plus robbery. If that is so, the issue is subsumed by the discussion in the succeeding paragraphs. If, however, the alibi involves something or someone else, petitioner fails to identify it, as a result of which the Court will consider it no further, *Green v. Wingo*, *supra*.

(b) Petitioner asserts that attorney Slagle failed to interview and call as a witness an individual by the name of Austin White, and that he failed to interview the government's witnesses. Even if true, the fact remains that petitioner told this court, *under oath*, that he robbed the Pizza Plus restaurant at gunpoint. He also testified that he was satisfied with attorney Slagle's representation. [Transcript of Change of Plea Hearing, Doc. 146.] His plea of guilty was knowing and voluntary. His belated attempt to withdraw that plea was perjurious and a transparent attempt to manipulate this court to his advantage. [*See*, transcript of hearing, Doc. 149, pp. 16 *et seq*]. This court recalls well that hearing and petitioner's outrageously false

9

testimony. This court is not required to hear the same testimony again merely because petitioner attempts to present it within the context of a §2255 motion; a federal trial judge who hears a collateral attack on a proceeding over which he earlier presided may rely on his recollections of the previous proceeding in deciding the issues in the collateral attack. *See*, *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In view of petitioner's sworn testimony before this court that he committed the armed robbery of the Pizza Plus restaurant, he suffered no prejudice by attorney Slagle's alleged failure to interview witnesses.

(c) Petitioner claims that Attorney Slagle failed to seek a dismissal of the indictment because the government destroyed or hid *Brady* material. The evidence of which petitioner speaks is an audiotape of a state court preliminary hearing which apparently occurred while he was charged in that court with the Pizza Plus robbery. There is nothing in this record – anywhere—that suggests that the United States Attorney's office had such a recording in its possession, and therefore there could be no violation of *Brady v. Maryland.* Nor does petitioner explain how the recording would have been of any benefit to him. This claim has no merit.

(d) Next, petitioner says that attorney Slagle failed to move to dismiss the indictment or suppress the identification made by Ms. Jones, the Pizza Plus employee who was petitioner's victim. This claim is patently false. Mr. Slagle filed a motion to suppress Ms. Jones's identification of petitioner (doc. 23). The magistrate judge recommended that the motion be denied, to which attorney Slagle objected, (document 101). The court overruled the objection. [Doc. 105.]

(e) Petitioner claims that attorney Slagle failed to file a motion for a continuance. However, Mr. Slagle had been representing petitioner for a year or more, and presumably he did

10

not believe a continuance was needed. Petitioner's assertion that attorney Slagle should have asked for a continuance because he was unprepared is nothing more than petitioner's *ipse dixit*.

**(3) Petitioner's sentence was unconstitutional under *Alleyne*.**

First, *Alleyne v. United States,* 133 S.Ct. 2151 (2013) does not retroactively apply to cases which were final when *Alleyne* was decided. *In Re Mazzio*, 756 F.3d 487 (6th Cir. 2014); *Rogers v. U.S.,* 2014 WL 127121 (6th Cir, 2014). Petitioner's case had been long final by the time *Alleyne* was decided. Here, the mandate of the court of appeals was filed on September 5, 2012. If 90 days in which to file a petition for certiorari to the Supreme Court should be added, the judgment in petitioner's case became final on December 12, 2012. *Alleyne* was decided on June 17, 2013.

Second, *Alleyne* applies only to findings of fact which increase the statutory penalty for an offense; it does not apply to findings by the trial judge which increase a sentence within the allowable statutory range, *Alleyne*, *supra*, at 2163. Petitioner's sentences were within the maximums established by the relevant statutes.

For either or both of the foregoing reasons, *Alleyne* is inapplicable to petitioner' case.

**B.      Claims Raised In Amended Motion, [Doc. 196-3]**

Petitioner raises three additional grounds in his amended motion: (1) that attorney Slagle rendered ineffective assistance during the hearing on petitioner's *pro se* motion to withdraw his guilty plea because he had a "conflict of interest" and "testified" in opposition to the relief petitioner was requesting; (2) that his appellate counsel, James Bowman, provided ineffective assistance by failing to assign as an error this court's refusal to allow petitioner to withdraw his guilty plea, and (3) that attorney Slagle failed to properly investigate the case and coerced petitioner into pleading guilty to the Hobbs Act robbery and §924(c) charges.

11

At the outset it is noted that petitioner's amended motion was filed well after the one-year period allowed by 28 U.S.C. §2255(f). A conviction becomes "final [for purposes of § 2255(f)] at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001). Where a defendant pursues further direct review by filing a petition for certiorari with the United States Supreme Court, direct review concludes when the Supreme Court either denies the petition for certiorari or decides the case. *Clay v. United States*, 537 U.S. 522, 532 (2003). If a defendant pursues a direct appeal to the court of appeals but does not petition the United States Supreme Court for certiorari, his judgment becomes final when the time expires for filing such petition—90 days after entry of the intermediate appellate court's judgment. *Id.*; see also Supreme Court Rule 13(3) ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate."). Therefore, as noted earlier, petitioner's sentence became final, at the latest, on December 12, 2012, which gave him until December 13, 2013 (again, at the latest) to file a §2255 motion.

Petitioner's original motion was filed on August 5, 2013. But his motion to amend his §2255 motion was not filed until February 3, 2014, and any claims raised in the amended motion are barred unless they "relate back" to a claim raised in the original motion, Fed. R. Crim. P.15, or unless there is a basis to equitably toll the running of the statute of limitation.[2]

Attorney Bowman is not mentioned by name or function until the filing of the amended motion, from which it follows that there is nothing to which this belated claim can relate back.

---

[2] The amended motion also appears as Document 186-1, making it appear at first glance that it was filed as a part of Document 186. It was not. The clerk added the proposed amendment, which was initially filed as Document 196-3, as an exhibit to doc. 186, apparently because the clerk misunderstood the order of the magistrate judge, (Doc. 197) who intended that the proposed amended petition be filed separately, which would have then been doc. 198. It is of no consequence so long as it is clearly understood that the amendment was not proffered until filed as a part of Document 196 on February 3, 2014.

12

The additional claims in the amendment are directed at attorney Slagle, who of course is named in the original motion, but the specific claims advanced in the amended motion have no connection to any claims in the original motion apart from the fact that they generally involve Slagle's representation. "Ineffective representation" is not some vast umbrella under which various claims can be raised *ad infinitum*; for any additional claim of ineffective representation raised in an amendment to relate back to an original claim of ineffective representation, the *specific* act of ineffective representation in the amendment must have some connection in "time and type" to a *specific* act of ineffective representation alleged in the original motion, *Mayle v. Felix*, 545 U.S. 644, 656-7 (2005). If it were otherwise, §2255(f) is all but meaningless.

When the magistrate judge allowed the amended petition to be filed, he made it clear that his order should not be construed as a ruling on whether the claims raised therein were barred by §2255(f); *see*, Order, Document 197. None of the claims in the amended motion relate back to any claims in the original motion under Rule 15. Therefore, those claims are barred unless the limitation of § 2255(f) should be equitably tolled.

Petitioner attempts to excuse his belated filing of his amended motion by pointing out that the prison was "locked down" from February 25, 2013 through April 10, 2013, and that he later was placed in "administrative segregation" because he fought with other inmates, [Doc. 196]. Petitioner's amended motion is not saved by equitable tolling. For equitable tolling to save a § 2255 motion that is filed beyond the one-year limit allowed by § 2255(f), the Court is to consider five factors: (1) The petitioner's lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing his rights; (4) whether there is any prejudice to the respondent's rights; and (5) the reasonableness of his ignorance of the legal requirements for filing his claim, *Dunlap v. United States*, 250 F.3d 1001,

1008 (6th Cir. 2001). Whether the government would suffer any prejudice is a matter of speculation, but for the moment it is assumed that it would not. The remaining four factors clearly weigh against petitioner. He knew of his right to file a § 2255 motion and when to file it. The only question is whether his administrative segregation and the prison's lock-down amounted to "government [state] action" that prevented him from timely asserting the claims he has included in his amended motion. The answer is no, beyond any reasonable argument. In *United States v. Stone*, 68 Fed. App'x 563 (6th Cir. 2003), the defendant asked to be allowed to file a § 2255 motion after the one-year period based on equitable tolling. He argued that he could not file his § 2255 motion within the one-year period because he had been transferred from a federal prison to a state facility pursuant to a writ of habeas corpus *ad prosequendum* and was not allowed to bring his personal property and legal materials with him. The court held that his transfer from a federal facility to a state facility was not unconstitutional and thus no "extraordinary circumstance" warranted equitable tolling of the one-year limitation period, *id*., at 566.

Here, nothing in petitioner's amended motion was belatedly discovered (or undiscoverable) until after the one-year limitation period has expired. Petitioner knew of the facts set forth in the amended motion when he filed the original motion. The prison's lock-down and his administrative segregation could not possibly have had any effect upon his failure to include those allegations in his original petition. He could have done so, but he did not. Equitable tolling is not warranted.

**V.  Conclusion**

For the reasons set forth above, the Court holds that petitioner's sentencing was not in violation of the constitution or laws of the United States and his motion to vacate, set aside or

correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

                                               s/J. RONNIE GREER
                                               UNITED STATES DISTRICT JUDGE